IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

REYNALDO AROCHO-MERCADO,

Plaintiff

v.                                                       CIVIL 05-1872 (JAG)

OCÉ NORTH AMERICA, INC.,

Defendant

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Reynaldo Arocho Mercado (hereinafter "Arocho") is a citizen of the United States with residence in Puerto Rico.  He is the owner of Expressway Graphics, a business dedicated to industrial and marketing printing works with main offices in Lares, Puerto Rico.  Defendant Océ North America is a corporation with residence and headquarters in Chicago Illinois.  Plaintiff brought this action against defendant for damages allegedly suffered as the result of defendant's having sold an industrial printer to him, which printer arrived substantially damaged.  Plaintiff also alleges that the equipment was also used.

The amount in controversy in accordance with the well-pleaded complaint, exceeds the amount of $75,000, exclusive of costs and attorney's fees.

On November 2, 2005, the defendant moved to dismiss the complaint pursuant to Rule 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, based upon provisions of the contract between the parties which call for a limitation and disclaimer of liability wherein Océ would be held liability only for direct damages but

CIVIL 05-1872 (JAG)                              2

not to exceed $50,000.  The motion to dismiss is also based upon a contractual

clause, a forum-selection provision, which provides that the agreement will be

governed by and construed in accordance with the laws of the State of Illinois, and

that customers agree that the state and federal courts which sit in Cook County in

the State of  Illinois will be the exclusive forum and venue of all controversies and

disputes arising under the contract, and they voluntarily submit to the jurisdiction

and venue of said courts.

Because of the limitation provision, the most plaintiff can arguably recover is

direct damages not to exceed $50,000.  Consequently, the defendant argues that

there is no subject matter jurisdiction because plaintiff cannot recover more than

$50,000 on breach of contract, thus defeating diversity jurisdiction.  Océ also argues

that Puerto Rico is not the correct forum to resolve this controversy.

Plaintiff attacks the enforceability of the forum selection clause and the

contract in general on the grounds that the document was never signed by one of the

parties, and that Océ is trying to introduce three pages that were never part of the

original "Customer Agreement."   (Docket No. 13, dated November 29, 2005.)

Plaintiff submits a sworn statement with his opposition.

At the evidentiary hearing held on February 21, 2006, plaintiff Reynaldo

Arocho Mercado testified that since 1991, he has conducted business as Expressway

Graphics, a business which makes signs, printing and embroidery.  He has 10

CIVIL 05-1872 (JAG)                    3

employees.   Plaintiff became familiar with defendant Océ North America, Inc., a

company which manufactures sign-making machines, at a trade show.

Plaintiff filed a complaint for damages because a printing machine which he

had ordered from Océ arrived at his business in Lares damaged.  He reached the

conclusion that Océ broke it, that Océ transported the machine from San José to

Montebello, California, and then to Puerto Rico.  Plaintiff has a file of all of the

documents related to this transaction, all of which are prepared either by Océ and

plaintiff.  Exhibit A-1 is a quotation for an Arizona 180 printing machine which was

prepared during the trade show.  Plaintiff did not buy this machine.  Exhibit A-2 is

a brochure relating a special on the Arizona 500 which is totally different from the

Arizona 180 since it has a higher capacity and is bigger and more expensive.  The

sales prices for the Arizona 500 was $69,995 and the total price would be about

$81,000 including supplies.  Exhibit A-3 is an e-mail which relates to the expected

profits plaintiff could realize with the Arizona 500.

Exhibit A-4 is a quote on a remanufactured Arizona 500 which he did not buy.

Exhibit A-6 is the contract for a new Arizona 500 which contained two pages, and

which was signed in Lares with Mr. Anthony Torres present.  Mr. Torres is the

person who gave plaintiff the contract.  Plaintiff decided to purchase the same.

Anthony Torres later sent an e-mail congratulating plaintiff on the buy.  (Ex. A-7.)

A site survey was prepared at the shop in Lares.  (Ex. A-8.)  Plaintiff received a

message from the defendant that he was to communicate with Rótulos Bacó to

CIVIL 05-1872 (JAG)                          4

conduct training in Puerto Rico but upon contacting Rótulos Bacó, plaintiff learned

there was no training or at very least he was not invited to attend.  Exhibit A-10

which consists of three pages was signed at plaintiff's shop in Lares on June 17,

2004.  Exhibit A-8 was signed on the same day.  Plaintiff was provided with a two-

page contract by Armando Torres, that is the contract and the customer agreement.

On the date the contract was signed, terms and form of payment were discussed.

The contract was not signed by Océ.  Making reference to Exhibit A-10, plaintiff said

he has never seen pages two, three, and four of the agreement, and does not recall

any multi-page document with the signature on the front page, although he signed

the service agreement.  Plaintiff stated that he was never told of a forum-selection

clause and had never heard of a $50,000 liability limit.

Plaintiff has paid $61,000 of the purchase price and owes $20,000 and $6,000

in taxes.  He estimates that he has lost income of between $50,000 and $100,000.

Océ's salesman Alberto Torres had visited plaintiff twice, once between February and

May, 2004, and the second time on June 17, 2004, and spent at least three hours

with plaintiff on June 17, 2004 talking about agreements and discussing documents.

An expected delivery date was discussed as well as a 90-day warranty for parts and

labor which plaintiff expected as part of the contract.

Plaintiff testified that he had a binder with all of the documents related to the

parties and contract but on cross-examination, it appeared that he was missing some

papers related to the relationship between Océ and himself.  See I.d. 1 through 7.

CIVIL 05-1872 (JAG)                              5

Plaintiff noted that it was not his practice to initial every page of a multipage document but previously had said that it was.  He said that he never would have accepted such "irregular conditions" as those placed in the missing contract pages.  He emphasized that he had never seen the missing pages.

Plaintiff explained that he gets along in English.  He noted that although the Arizona 500 does not work, he has other machines which continue operating.  The Arizona 500 has never been used.  He had purchased it because he expected it to do more work, of superior quality, much more than with the other machines.

Anthony Torres, senior account manager for Océ for the last four years, testified that he had met plaintiff at a trade show in Miami in 2003 and plaintiff had liked the Arizona 180 but there was no sale.  At a later trade show, plaintiff was again interested in an Arizona 180 and was given another quote.  In the spring of 2004, they discussed a remanufactured Arizona 500.  Making reference to Exhibit A-4, Mr. Torres explained that it is attached to the contract as a cover sheet.  He recalled visiting plaintiff twice, in May and on June 17, 2004.  He prepared Exhibit A-6, customer agreement.  He recalled spending three hours at plaintiff's shop on June 17, 2004 which included making a site survey since Océ will not ship without one.  (Ex. A-8.)  Making reference to Exhibit A-10, Mr. Torres noted that Jeanne Thomas of Océ had made written notations on the document after June 17, 2004.  Mr. Torres said that he had showed plaintiff the terms and conditions pages of the contract and had talked about the warranty for parts and labor.  Mr. Torres related

CIVIL 05-1872 (JAG)                        6

the nature of the conversations he had with plaintiff on June 17, 2004.  Plaintiff did

not accept Océ's designated shipper and arraigned for a shipper.  The shipping terms

had not been agreed upon before Mr. Torres left Lajas on the 17th.  He felt it strange

not to use Océ's freight forwarder.   Mr. Torres considered the sale a lengthy

transaction.  There were several changes in the sales agreement and all changes

were reviewed with plaintiff.

Mr. Torres did not ask plaintiff to initial the pages of the agreement.  Referring

to Exhibit A-10, Mr. Torres noted that Océ's signature never appears in this

document and that he is not allowed to sign the same.  Ronald Enders is the one

that is authorized to execute the agreement.  He noted that pages two, three and four

are necessary as detailing the terms and conditions and that there are templates

prepared with the contents of those pages.

For the reasons set forth below, I recommend that the motion to dismiss for

failure to state a claim upon which relief can be granted, and for lack of subject

matter jurisdiction be denied.

Océ argues that the forum-selection clause and the $50,000 limitation for

recovery divest this court not only of jurisdiction but of venue.  Plaintiff notes that

the contract was not signed by Océ and therefore its terms are not enforceable

against him.  The defendant has not presented evidence that plaintiff ever received

a copy of the contract signed by both parties, including a representative of Océ.  By

its own terms, the agreement is only binding upon the signature of an authorized

CIVIL 05-1872 (JAG)                          7

Océ representative.  Plaintiff also focuses on Océ's producing three pages that were never a part of the customer agreement.  The testimonies of Mr. Arocho and Mr. Torres are at loggerheads because there can be no conciliation as to whether the contract contained an additional three pages.  Mr. Arocho assures that the entire contract which he agreed to and signed is a copy of which he presented in court, while Mr. Torres assures that the contract he presented to Mr. Torres consisted of four pages, thus insisting that the three pages were part of the contract and were explained to plaintiff. (Ex. 9.)  Plaintiff on the other hand assures that he never saw those three pages and argues that had he seen them, he would not have agreed to the terms contained in the same, especially the forum selection clause and the limitation of liability clause.

Dismissing a facially valid complaint with a facially valid jurisdictional statement with the evidence presented at the hearing would be a drastic measure. After listening to both witnesses regarding the existence of the three pages in question, it is difficult to decide that the evidence gravitates toward favoring one of them, especially Océ.  I make the following observation.  Océ is not able to produce the original contract in its entirety, a contract it is seeking to enforce.  The production of the original at very least would partially fill the vacuum which this unnecessary lack of evidence has left behind.  While the ordinary course of business has allegedly been followed by the defendant, part of that ordinary course would be to preserve the original contract since plaintiff has sufficiently rebutted that the

CIVIL 05-1872 (JAG)                                    8

ordinary course of business has been followed.  A curiosity in the structure of the

contract is the numeration of the pages where the cardinal numbering system

reflects where in the contract each page belongs,[1] except that the first page reflects

no number.   Cf. Lousarian v. Royal Caribbean Corp., 951 F.2d 7, 10 (1st Cir. 1991).

That may be because the first page is used to make proposals, or it may be by design,

or by mistake.  However, since this type of contract may be considered an adhesion

contract, the defendant at this stage should not be allowed to reap the benefit of an

ambiguity it has created, and which it could easily have avoided.[2]  "Under Puerto

Rico law, an agreement is 'clear' when it can 'be understood in one sense alone,

without   leaving   any   room   for   doubt,   controversies   or   difference   of

interpretation. . . .'" Executive Leasing Corp. v. Banco Popular de P.R., 48 F.3d 66,

69 (1st Cir. 1995) (citations omitted); see P.R. Laws Ann. tit. 31, § 3471.  Indeed,

the two clauses that Océ seeks to enforce are not mentioned anywhere else in any

correspondence.  This together with Océ's failure to have preserved the original

contract, or to have produced it by now, is sufficient grounds to deny the motion to

dismiss.  Finally, Océ argues that the jurisdictional amount has not been met, based

upon the limitations clause in the contract.  At the hearing there was evidence

presented during the cross-examination of plaintiff that he has paid $61,000 to Océ

---

[1]For example, page 1 of 4 pages, page 2 of 4 pages; or, page 2 of 4, page 3 of 4, etc.

[2]I am not questioning the validity of such a contract.  See Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 331 (1st Cir. 2000).

CIVIL 05-1872 (JAG)                                    9

and that he has had out-of-pocket expenses of $4,500, thus having paid out less than

$66,000, which is less than the $75,000 threshold jurisdictional amount.  Plaintiff

noted that he had other expenses reflected in other documents which were not

presented.

   To establish jurisdiction under 28 U.S.C. § 1332(a), "the amount in

controversy is determined by looking at the circumstances at the time the complaint

is filed."  Coventry Sewages Assocs. v. Dworkin Realty Co., 71 F.3d 1, 4 (1st Cir.

1995) (citing Thesleff v. Hardvard Trust Co., 154 F.2d 732, 732 n.1 (1st Cir. 1946));

Betancourt v. Bear Stearns & Co., 392 F. Supp. 2d 187, 189 (D.P.R. 2005).  The

general rule is that the amount-in-controversy requirement for diversity jurisdiction

must be determined "from the complaint itself, unless it appears or is

[demonstrated] that the amount stated . . . is not claimed in good faith."  Horton v.

Liberty Mut. Ins., Co., 367 U.S. 348, 353 (1961); see also St. Paul Mercury Indem.

Co. v. Red Cab Co., 303 U.S. 283, 288 (1938) (footnotes omitted) ("[T]he sum

claimed by the plaintiff controls if the claim is apparently made in good faith.").

   When determining good faith, the court must inquire whether "it 'appear[s]

to a legal certainty that the claim is really for less than the jurisdictional amount.'"

Coventry Sewages Assocs. v. Dworkin Realty Co., 71 F.3d at 6 (quoting St. Paul

Mercury Indem. Co. v. Red Cab Co., 303 U.S. at 289); see also Duchesne v. Am.

Airlines, Inc., 758 F.2d 27, 28 (1st Cir. 1985).  This inquiry involves an element of

"objective good faith" because although a plaintiff may have not acted in deliberate

CIVIL 05-1872 (JAG)                        10

bad faith, dismissal is warranted if it appears to anyone familiar with the applicable law that the claim cannot be objectively viewed as worth the jurisdictional amount. Coventry Sewages Assocs. v. Dworkin Realty Co., 71 F.3d at 6 (citing Jiménez-Puig v. Avis Rent-A-Car-Sys., 574 F2d 37, 40 (1st Cir. 1978)).

Plaintiff's ad damnum reflects elements of damages which do not favor dismissing the action for lack of subject matter jurisdiction. Loss of income may yet be proven as can be additional incidental expenses. The focus of the evidentiary hearing was the efficacy of the $50,000 limitation and the forum selection clause in the purportedly missing contract pages. The well-pleaded complaint reflects that plaintiff's claim is not really for less than the $75,000. Therefore, the jurisdictional requirement has been met.

Forum Selection Clauses

Traditionally, American courts had not favored forum selection clauses and have denied enforcement of them "on the ground that they were 'contrary to public policy,' or that their effect was to 'oust the jurisdiction' of the court." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9 (1972) (footnote omitted). Some courts tend to deem forum selection clauses prima facie valid and invalidate such clauses only when it is found that their content "would be unreasonable and unjust, or . . . the clause [is] invalid for such reasons as fraud or overreaching[]" under the circumstances. Id. at 15; Silva v. Encyclopedia Britannica Inc., 239 F.3d 385, 389 (1st Cir. 2001); Lambert v. Kysar, 983 F.2d 1110, 1119 (1st Cir. 1993); see Pérez v.

CIVIL 05-1872 (JAG)                          11

<u>Carnival Cruise Lines</u>, 993 F. Supp. 39, 40 (D.P.R. 1998).  <u>See also</u> <u>Elite Parfums,</u> <u>Ltd. v. Rivera</u>, 872 F. Supp. 1269, 1272 (S.D.N.Y. 1995); <u>D'Antuono v. CCH</u> <u>Computax Sys., Inc.</u>, 570 F. Supp. 708, 711 (D.R.I. 1983).

The fact that the transaction was held in Puerto Rico is irrelevant as long as one is considering a valid forum selection clause.  Contractual forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."  <u>Silva v.</u> <u>Encyclopedia Britannica Inc.</u>, 239 F.3d at 386 (citing <u>M/S Bremen v. Zapata Off-</u> <u>Shore Co.</u> 407 U.S. at 10); <u>see</u> <u>González v. Avatar Realty, Inc.</u>, 177 F. Supp. 2d 101, 104 (D.P.R. 2001); <u>In re Mercurio</u>, 402 F.3d 62, 67 (1st Cir. 2005).

It has also been established that "analysis of the issue of notice depends on the opportunity for knowledge of the terms of the contract" rather than on such actual knowledge.  <u>Lousarian v. Royal Caribbean Corp.</u>, 951 F.2d at 11.  Furthermore, "'boilerplate' provisions [do] not ipso facto render [these clauses] invalid[]" and "[i]t is not the law that one must bargain for each and every written term of a contract." <u>Silva v. Encyclopedia Britannica Inc.</u>, 239 F.3d at 389 (citing <u>Lambert v.</u> <u>Kysar</u>, 983 F.2d at 1119-20).  In any event, there is still an issue remaining as to whether the entire contract as proffered by Océ was tendered to and agreed to by plaintiff.  Therefore, I do not go into an in-depth analysis of the forum selection clause argument.

CIVIL 05-1872 (JAG)                    12

Océ has not shown that it is entitled to enforce the limitation of liability and forum-selection clauses of the customer agreement because the evidence presented at the hearing does not reflect that plaintiff was probably presented with the same on June 17, 2004.

In view of the above, I recommend that the motion to dismiss be denied.

Under the provisions of Rule 510.2, Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 20th day of April, 2006.

S/ JUSTO ARENAS
Chief United States Magistrate Judge